**The UNITED STATES of America, f/u/b/o Calderon & Oyarzun, Inc., Plaintiff, Appellant,**

v.

**MSI CORPORATION et al., Defendants, Appellees.**

**No. 7121.**

United States Court of Appeals First Circuit.

Heard Feb. 4, 1969.

Decided April 9, 1969.

Rafael Martinez-Alvarez, Jr., Santurce, P. R., with whom Rafael Martinez-Alvarez, III, San Juan, P. R., was on brief, for appellant.

Richard S. Crone, Pittsburgh, Pa., with whom Victor House, Santurce, P. R., and Crone & Cohen, Pittsburgh, Pa., were on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellee MSI Corporation was the general contractor with the Federal Aviation Agency for a construction project at San Juan, Puerto Rico. Appellant held three subcontracts from MSI, but prior to completion of work on the contracts, appellant walked off the job claiming that MSI had not paid amounts due and owing appellant under

the contracts. Appellant subsequently filed suit under the Miller Act to recover the amounts alleged to be due. MSI counterclaimed for damages caused by its having to complete the three contracts originally let to appellant.[1]

After a painstaking, and undoubtedly painful review of the evidence, the district court concluded that appellant terminated work without cause but that it was entitled to recover $45,585.50 as money due but unpaid. However, the district court also found that MSI suffered damages of $64,677.56 as a result of appellant's wrongful termination. After offsetting the amount due appellant by MSI's damages, the court awarded a judgment of $19,092.06 in favor of MSI.

Appellant now asks the court to find that the district court erred in finding that appellant ceased work without cause, and in finding that MSI suffered damages because of the termination of work. We note at the outset that appellant bears a heavy burden under Rule 52(a), Fed.R.Civ.P., in that the findings of the district court will be set aside only if clearly erroneous.

Appellant argues that the district court erred in finding that it ceased work without cause. As is often the case in the construction industry, the parties did not insist on strict adherence to the terms of the contracts.[2] Nevertheless, absent convincing evidence that the parties modified their obligations by mutual consent, the contract terms must serve as the standard by which the obligations of the parties are measured.

Appellant had three subcontracts, identified by the parties and the district court as contract numbers 7, 8, and 9 respectively. No work was performed on contract 8. Moreover, all work done on contract number 7 was paid for by MSI and appellant does not now press any claim under that contract. The only subject of dispute between the parties is the status of payments under contract number 9.

Section 2K of the contract governed payment and provided as follows:

"* * * partial payments shall be made to you [appellant] by MSI out of progress payments from the owner for [95%] of work in place and material on the job site as approved by the owner * * * Provided, however, that after your first partial payment MSI shall have the right, at its option, to withhold any subsequent partial payments until you furnish satisfactory proof of payment for labor, material. * * * "

In addition, MSI was to pay all workman's compensation premiums upon presentation of invoices. The contract also contained a breakdown schedule for payment purposes only, whereby prices were fixed for specific items, e. g., $5,500 was to be paid for sidewalks.

Contract number 9 was for the sum of $163,700, covered a variety of projects, and was clearly the most significant of the three contracts between the parties. Between March 19, 1964, when work began and September 3, 1964, when appellant terminated work, appellant presented requests for payment totaling $127,845.49. MSI paid only $69,790.00 during this period.

At a minimum it is clear that MSI did not meet its obligation to pay all workman's compensation premiums. Undisputed claims for $4,845 were presented by appellant but MSI paid only $1,200. Although a technical breach of the contract, this fact alone did not justify appellant's termination of work. *See generally,* 4 Corbin, Contracts § 948.

Moreover, it is clear, as the district court found, that MSI did not pay 95 per cent of materials in place and work completed as estimated and requested by appellant. Instead, MSI computed its

---

1. Suit was filed in the Federal District Court in Puerto Rico and named as defendants were MSI and its payment bond surety, American Casualty Company.

2. Thus, although the contracts provided for work changes only upon written order, the district court found that oral modifications were in fact made and appellee was charged accordingly.

payments in accordance with the "critical path" reports compiled by the FAA.[3] The record reveals that the payment process involved the following steps: First, appellant submitted payment requests or estimates of amounts due to Mr. Pearce, MSI's resident engineer. These requests were in turn submitted by Mr. Pearce to Mr. Wilkie, the resident engineer for the owner, the Federal Aviation Agency. The payment requests were utilized to some extent by the FAA in computing the critical path report, on the basis of which the FAA certified percentages of completion. The FAA then forwarded payments for the certified percentages to MSI and it was out of these FAA payments that MSI paid appellant.

Appellant does not dispute the fact that MSI paid in accordance with critical path certifications. Instead, appellant urges an interpretation of the contract different from that followed by MSI and adopted by the district court. Specifically, appellant contends that MSI was obligated to make monthly payments whether or not payment had been received from the FAA. In addition, appellant apparently contends that its own payment requests rather than FAA certifications should determine amounts owing by MSI.[4]

Appellant's contentions are asserted in total disregard of the governing contractual provisions. For example, section 2K of the contract unambiguously provides that payment will be made for 95 per cent of work and materials *as approved by the owner,* and that payment shall be made *out of progress payments from the owner.* The contract also recited that it was subject to the provisions of the prime contract between the FAA and MSI, and that contract clearly prescribed the use of the critical path method.

 In light of our foregoing discussion, we agree with the district court that appellant terminated work without cause. That being so, appellant was clearly liable for damages incurred by MSI in completing the contracts breached by appellant. We have carefully reviewed the record and the district court's findings, and we are satisfied that the damages fixed by the district court were fair. Indeed, if anything, the district court findings were favorable to appellant.

Affirmed.

---

3. Essentially, the critical path method refers to a process in which the entire construction project is programmed by computer to show the percentage of work done, the value of the item, and the period in which the work should be completed in order to avoid delays.

4. With respect to contract number 9 appellant argues that the breakdown schedule, rather than progress payments from the owner, was to govern payment. This argument is completely without merit. The breakdown schedule was undoubtedly intended to aid in computing payments by assigning values to various items but nowhere does it appear that appellant's own estimates, albeit based on that schedule, were to govern amounts owing.

Appellant endeavored to bulwark its theory by stressing the coincidence in amounts of early requests and early payments. On analysis we find the explanation in the fact that requests approximated amounts determined to be due by the critical path method prescribed in the prime contract rather than in any mutually agreed change in procedure.